IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


ANDREW R. PERRONG,                    :   No. 2:22-cv-04013
                                      :
              Plaintiff               :
                                      :
         vs.                          :
                                      :
CHARLIE FOR GOVERNOR, CHARLES         :
GEROW, AND MARGUERITE LUKSIK,         :
                                      :
         Defendants                   :
                                      :
--------------------------------      :


Deposition


        Of      :   Andrew R. Perrong, Esquire


        Taken by :  Charles R. Gerow, Esquire


        Date    :   Tuesday, November 28, 2023
                        9:30 a.m.


        Place   :   Lancaster County Bar Association
                    28 East Orange Street
                    Lancaster, Pennsylvania 17602


        Before  :   Cathy S. Mertz
                    Registered Merit Reporter
                    Certified Realtime Reporter
                    Notary Public

APPEARANCES:

ANDREW R. PERRONG, ESQUIRE
PERRONG LAW, LLC
2657 Mount Carmel Avenue
Glensdale, PA  19038
    Pro Se

CHARLES R. GEROW, ESQUIRE
4725 Charles Road
Mechanicsburg, PA  17050
    Pro Se

INDEX TO WITNESS

Andrew R. Perrong
  Examination by Mr. Gerow.....................4

1        ANDREW R. PERRONG, ESQUIRE
       called as a witness, having been duly sworn or
2     affirmed, was examined and testified as follows:

3                          EXAMINATION

4     BY MR. GERROW:

5        Q.   Good morning.  I'm Charlie Gerow, and I am

6     here in my capacity as a defendant in the matter of

7     Andrew Perrong versus Charlie Gerow for Governor,

8     Charles Gerow individually and Marguerite Luksik.

9             Today we're taking the deposition of the

10    plaintiff, Andrew Perrong.

11            Mr. Perrong, have you been deposed before?

12       A.   Yes.

13       Q.   So you're familiar with what a deposition

14    entails?

15       A.   Yes.

16       Q.   Okay.  So just the general instructions

17    would be that you need to form your answers audibly.

18    Hand gestures, nods of the head, et cetera, can't be

19    picked up by the stenographer.  You understand that;

20    correct?

21       A.   Yes.

22       Q.   And if you don't understand a question,

23    you'll ask for clarification.  If you answer the

24    question, it's assumed that you understood the

25    question.  Okay?

1       A.    Yes.

2       Q.    And if you need to take a break for any

3  reason, you'll indicate that, but we ask that you not

4  take a break when an answer is impending.  Okay?

5       A.    Yes.

6       Q.    And is there any reason why you can't give

7  testimony this morning?

8       A.    No.

9       Q.    Is there any impairment to your memory or

10  recollection today?

11       A.    No.

12       Q.    Have you had any alcohol or drugs that would

13  impair your ability to give testimony today?

14       A.    No.

15       Q.    Okay.  All right.  Could you, just for the

16  record, please state and spell your name?

17       A.    Andrew, A-n-d-r-e-w; Roman, R-o-m-a-n;

18  Perrong, P-e-r-r-o-n-g.

19       Q.    And what is your residence, Mr. Perrong?

20       A.    My residential address is 1657 The Fairway,

21  No. 131, Jenkintown, Pennsylvania, 19046.

22       Q.    And is that where you live?

23       A.    No.

24       Q.    Where do you live?

25       A.    I live at 3551 Post Road, Huntingdon Valley,

1    Pennsylvania, 19006.

2        Q.    Why do you use a different, quote/unquote,

3    residential address from where you actually live?

4        A.    I use a residential address to receive mail

5    because I've been threatened multiple times by

6    multiple people because of my consumer protection

7    litigation and consumer advocacy.

8        Q.    And are you employed?

9        A.    Yes.

10       Q.    And how are you employed?

11       A.    I'm an attorney.

12       Q.    You're an attorney?

13       A.    Yes.

14       Q.    And are you licensed to practice before the

15   Bar of Pennsylvania?

16       A.    Yes.

17       Q.    And when did you become licensed to practice

18   before the Bar of Pennsylvania?

19       A.    October 10th of 2023.

20       Q.    And what is your attorney ID number?

21       A.    333687.

22       Q.    And prior to October 10th, 2023, how were

23   you employed?

24       A.    I was a law student and I was also the owner

25   of a computer services -- freelance computer services

1    business, which I still do as well.

2        Q.   Now, in your complaint, you list a phone

3    number as being 215-947-XXXX.

4            Do you have other phone numbers?

5        A.   Yes.

6        Q.   What are they?

7        A.   I have other phone numbers, but they're not

8    relevant to this complaint.

9        Q.   They are relevant to this.  How many other

10   phone numbers do you have?

11       A.   Personally, I have four other telephone

12   numbers.  Five if you count the number that's -- that

13   I use for litigation on the complaint.

14       Q.   And why is it that you have five different

15   phone numbers?

16       A.   Because I have an iPhone and an Android.  I

17   have two residential lines and a Voice Over IP line.

18       Q.   Okay.  And the number that you reference in

19   your complaint, the 215-947-XXXX number, when did you

20   acquire that number?

21       A.   That number was acquired sometime in 2003, I

22   believe.

23       Q.   And from whom did you acquire it?

24       A.   From the telephone company.

25       Q.   And which company was that?

1    A.   From Verizon.

2    Q.   And is it attached to a cell phone?

3    A.   No.

4    Q.   Is it attached to the VOIP?

5    A.   It is a Voice Over IP number.

6    Q.   And for what particular reason did you get a

7 VOIP attachment?

8    A.   There's no particular reason.  It's Voice

9 Over IP.  Most telephone services nowadays are Voice

10 Over IP.  Verizon is no longer even installing copper

11 landlines.

12    Q.   And for what purpose do you use that

13 particular line?

14    A.   Personal residential household use.

15    Q.   Okay.  Do you carry a device that's attached

16 to that number?

17    A.   No.

18    Q.   So where do you receive calls?

19    A.   I can receive calls anywhere that my

20 telephone is plugged into an internet connection.

21    Q.   So on the date and time, that would be

22 either May 6 or May 7, where was that line,

23 quote/unquote, plugged into?

24    A.   I don't recall where it was plugged into.

25 It was plugged into multiple places.

1    Q.    Did you have the phone that it was plugged

2  into with you on those dates?

3    A.    I answered the call, so I was -- yes, it was

4  with me.

5    Q.    So you say you answered the call.  How did

6  it then record the call if you answered it?

7    A.    I record all -- practically every call

8  that's inbound to that number, especially if it's

9  illegal.

10    Q.    Are you aware of the rules of the statutes

11  of Pennsylvania regarding the recording of telephone

12  conversations?

13    A.    Yes.

14    Q.    So you didn't let it go to voicemail on

15  May 6 or May 7, you personally answered the call?

16    A.    That's correct.

17    Q.    And when you realized that it was not a

18  personal call, you stayed on the line; is that

19  correct?

20    A.    That's correct.

21    Q.    So on what basis do you allege that it

22  interfered with your quiet enjoyment of life on that

23  date when you stayed on the call once you realized

24  that it was an automated call?

25    A.    If I recall, I had -- if I recall correctly,

1    I had pasta on the stove heating up, so I was forced

2    to leave the stove, an active hot stove, and answer a

3    pre-recorded robocall.

4         Q.   But you didn't hang up?

5         A.   That's correct.

6         Q.   Okay.  So you left the hot pasta on the

7    stove while you listened to this entire call?

8         A.   Yes.  I listened to the call to identify who

9    the caller was.

10        Q.   Wasn't the caller identified right up front

11   in that conversation?

12        A.   No.

13        Q.   It wasn't.  Okay.

14             How about the other date?  There were two

15   dates that you aver you got calls on.  Did you have

16   hot pasta on the stove the second date as well?

17        A.   No.

18        Q.   Where were you the second date?

19        A.   At home.

20        Q.   And what were you doing?

21        A.   I don't recall.

22        Q.   And when you realized that the call was an

23   automated call, you stayed on the line; is that

24   correct?

25        A.   That's correct.

1    Q.   Okay.  Why did you do that?

2    A.   I wanted to identify the caller.

3    Q.   Okay.  The caller was identified right up

4  front, was it not?

5    A.   In that second call, there was a

6  pre-recorded message.  But again, obviously, I need

7  to stay on the call for long enough to identify who

8  the caller is, who the other participants on the call

9  are and the nature of the call.

10   Q.   Okay.  Now, in the first call, your averment

11  alleges that the pre-recorded call stated:

12        Hello.  This is pro-life leader Peg Luksik,

13  223-322-0908.  On Saturday, May 7th, between the

14  hours of 7:30 and 8:30 p.m., Congressman G.T.

15  Thompson will be hosting a live interactive town hall

16  meeting over the telephone with his choice for

17  Republican governor, Charlie Gerow.

18        Did you need to stay on the line past that?

19   A.   Yes.

20   Q.   Why?

21   A.   Because I wanted to see whether or not there

22  were required campaign disclosures at the end of the

23  call and see who paid for the call because sometimes

24  there are entities which make calls or say that

25  they're making calls without properly identifying

1  who's the payor for the call.  Even if they do

2  identify who the person who paid for the call is, I

3  need to identify who's paying for the call and who's

4  responsible for the call.

5    Q.   Okay.  And in the second call, the

6  conversation, according to your averment, began:

7        Hello.  This is pro-life leader Peg Luksik

8  at 223-322-0908.  Congressman G.T. Thompson is

9  currently conducting a live toll-free town hall

10  meeting over the phone with his choice for Republican

11  governor, Charlie Gerow.

12        Why did you need to go beyond that

13  particular call?

14    A.   Same reason, because there's often very many

15  players involved in calls.  People that authorize

16  calls might not be the same people as pay for calls.

17  There's issues of vicarious liability involved, so I

18  want to make sure that I have all the facts to

19  investigate the calls prior to filing a suit, as is

20  my obligation to investigate.

21    Q.   So have you filed suits like this before?

22    A.   Yes.

23    Q.   When was the first time you filed a suit

24  under the statute that you filed this suit under, the

25  TCPA?

```
 1      A.    I don't recall.  Sometime in 2015.
 2      Q.    You don't recall the first time you filed a
 3  suit?
 4      A.    I don't recall the -- the precise date.  I
 5  believe it was sometime in 2015 or 2014 maybe.
 6      Q.    Okay.  And where did you file that?
 7      A.    That would have been in the magisterial
 8  district court.
 9      Q.    Where?
10      A.    In my local magisterial district court.
11      Q.    And in 2015, how many suits did you file
12  under the TCPA?
13      A.    I don't know.
14      Q.    You don't know how many suits you filed?
15      A.    I don't know how many suits it was.  It was
16  somewhere maybe around five.
17      Q.    Maybe around five?
18      A.    That's correct.
19      Q.    Okay.  Did you file any in 2016?
20      A.    That's correct.
21      Q.    And how many did you file in 2016?
22      A.    I don't recall.  It's a matter of public
23  record.
24      Q.    You don't recall how many you filed in 2016?
25      A.    No.
```

1    Q.   You have no recollection of how many
2  lawsuits you filed in a given year?
3    A.   I don't know the number.  It's a matter of
4  public record.
5    Q.   I understand it's a matter of public record.
6  That's not what I asked.  I asked you if you have any
7  recollection of how many lawsuits you filed in the
8  year 2016.
9    A.   No.
10    Q.   Is it fair to say it was more than five?
11    A.   Yes.
12    Q.   Is it fair to say it's more than ten?
13    A.   I don't know.
14    Q.   I'm going to remind you that you're under
15  oath.  You're going to tell me again that you don't
16  know whether it was more or less than ten lawsuits
17  that you filed in the year 2016 under the provisions
18  of this statute?
19    A.   I don't recall the exact number, no.
20    Q.   And did you file any in 2017?
21    A.   Yes.
22    Q.   And how many did you file in 2017?
23    A.   Somewhere between ten and 20.
24    Q.   And did you file any in 2018?
25    A.   Yes.

1    Q.   And how many did you file in 2018?

2    A.   I don't know.

3    Q.   You knew how many you filed in 2017, but you

4  don't know how many you filed in 2018?

5    A.   I don't know by year how many lawsuits I

6  filed.

7    Q.   How many have you filed in total?

8    A.   Somewhere around 150.

9    Q.   Around 150?  More or less than 150?

10   A.   I don't know.  It's somewhere around 150.

11   Q.   Okay.  And as a result of these 150

12  lawsuits, how many settlements have you made?

13   A.   Somewhere around 140.

14   Q.   And what's the aggregate amount of those

15  settlements that you've recovered?

16   A.   I don't know.

17   Q.   You don't know?

18   A.   I don't know.

19   Q.   Let's go to the most recent year.  How many

20  suits have you filed under the TCPA in 2023?

21   A.   I don't recall.

22   Q.   You don't recall how many lawsuits you filed

23  this year?

24   A.   Personally or as an attorney?

25   Q.   On your own behalf.

```
 1        A.    I don't recall.  Somewhere around five.
 2        Q.    Somewhere around five.  And how many of
 3   those are pending?
 4        A.    I don't recall.
 5        Q.    You're an attorney.  You've filed lawsuits
 6   this year within the past 11 months, and it's your
 7   testimony that you don't know how many are pending
 8   currently?
 9        A.    I don't know whether or not they were filed
10   in 2022.  I have some that are pending from 2022.  I
11   have some pending from 2023.
12        Q.    Well, I asked you how many you filed in
13   2023.
14        A.    I don't know.
15        Q.    You said somewhere around five.
16        A.    I don't know where -- let me rephrase.
17              I don't know which one of those were filed
18   at the end of 2022, the beginning of 2023, and I
19   don't have anything in front of me to recall with
20   specificity that you're requesting the suits that
21   I've filed in 2023.
22        Q.    How many did you file in 2022?
23        A.    I don't recall.
24        Q.    How many did you file in 2021?
25        A.    I don't recall.
```

1   Q.   But you did file suits under the TCPA those

2   years?

3   A.   That's correct.

4   Q.   You filed multiple suits?

5   A.   That's correct.

6   Q.   And in addition to filing suits, you've made

7   settlements with people that you threatened to sue;

8   correct?

9   A.   That's correct.

10  Q.   And how many settlements have you made with

11  folks that you threatened to sue but didn't actually

12  file suit against?

13  A.   I don't recall.

14  Q.   Is it fair to say it's more than 150?

15  A.   Yes.

16  Q.   Is it fair to say it's more than 200?

17  A.   I don't recall.

18  Q.   Is it fair to say that you have created a

19  cottage industry out of filing suit under the TCPA?

20  A.   No.

21  Q.   Why is that unfair?

22  A.   Because I have a full-time job.  I now have

23  a different full-time job as an attorney.  It's not a

24  cottage industry.

25  Q.   You didn't have a full-time job.  You were a

1  law student and you had a computer company.  Which

2  was your full-time job?

3       A.   I was a part-time law student, evening law

4  student, and I had a full-time computer company.

5       Q.   Okay.  How much money have you received from

6  the settlements that you have made over the course of

7  the past eight years?

8       A.   I don't know.

9       Q.   You don't know.  Do you file a federal tax

10  return?

11       A.   Yes.

12       Q.   Do you file these on your federal tax

13  return?

14       A.   Yes.

15       Q.   Are you willing to produce those tax

16  returns?

17       A.   You can send me a discovery request and I'll

18  respond appropriately.

19       Q.   I asked if you're willing to do that.

20       A.   My answer is you can send me a request.

21       Q.   I'm asking you a simple yes or no question.

22  Are you willing to produce those tax returns?

23       A.   I will object to the production of any tax

24  returns.

25       Q.   But it's fair to say that you have recovered

1    a very significant amount of money?

2         A.    No.

3         Q.    It's not?

4         A.    No.

5         Q.    But you don't know how much it is?

6         A.    I know it's not significant.

7         Q.    Well, what would you consider significant?

8         A.    I don't know -- what would you consider

9    significant?

10        Q.    No, it's my deposition, I get to ask the

11   questions.  You get to answer them.

12              What would you consider to be significant?

13   You said it wasn't significant.  What would you

14   consider to be significant?

15        A.    I'm going to object to the form.

16        Q.    Okay.  Your objection is noted, now please

17   answer the question.  What would you consider to be

18   significant?

19        A.    It's unclear what you mean as to

20   significant.

21        Q.    Mr. Perrong, maybe the English language is a

22   little tough for you today.  I'm asking you what you

23   would consider to be significant.

24        A.    I don't understand what --

25        Q.    You don't understand the question?

1     A.   What your --

2     Q.   You don't understand the question?

3     A.   I don't understand your question, no.

4     Q.   You said that the number was not

5 significant.  What number would be necessary for you

6 to consider it to be significant?

7     A.   You stated that.

8     Q.   No, no, no, no, no.  Please answer the

9 question.  Don't tell me what I said.  Answer the

10 question.

11     A.   I don't -- I don't understand what

12 significant is.

13     Q.   I understand that.  Then why would you say

14 that it wasn't significant if you don't understand

15 what significant is?

16     A.   You used the word significant first.

17     Q.   Why would you say it wasn't if you didn't

18 understand what the -- what the word was?  You didn't

19 say I don't understand what significant is.

20        We discussed that as one of the rules of

21 this proceeding at the beginning, and you didn't say

22 I don't understand the question.  You said it wasn't

23 significant.  Isn't that correct?

24     A.   You asked me --

25     Q.   Isn't that correct?

1    A.   You asked me --

2    Q.   Isn't that correct?

3    A.   You asked --

4    Q.   Isn't --

5    A.   I'm going to object to the form.

6    Q.   Mr. Perrong, please answer my question.

7  Isn't that correct?

8    A.   I'm going to object to the form.

9    Q.   To the form of what?

10   A.   To the form of the question.

11   Q.   The form of the question is, isn't that

12  correct?  That's about as basic as it can possibly

13  be.

14   A.   And no, it's not correct.  Your

15  characterization is not correct.  The stenographer

16  notes that it's not correct, and you can look at the

17  transcript and you'll see that you asked -- you

18  brought up the term significant first.

19   Q.   I asked you if it was significant.  You said

20  it was not.  Is that incorrect?

21   A.   That is what I said.

22   Q.   Okay.  So you understood the term

23  significant when you answered the question.  Why

24  can't you tell us now what you understood significant

25  to be?

1    A.    I understand significant in the common

2  English language term.  I don't believe I associated

3  any number to significant at the time that you asked

4  the question.

5    Q.    So you didn't really answer the question

6  truthfully, did you, Mr. Perrong?

7    A.    I did.

8    Q.    Okay.

9    A.    I answered the question in terms of the

10 common English language meaning of significant

11 without associating a number to the term significant.

12   Q.    Okay.  Now, you allege that the defendants

13 utilized an automatic telephone dialing system; is

14 that correct?

15   A.    Correct.

16   Q.    On what basis did you make that averment?

17   A.    The call was pre-recorded.  It was sent

18 using some form of random or sequential number

19 generation functionality in addition to being

20 prerecorded.

21   Q.    Now, you refer in your complaint to an

22 entity called Tele-Town Hall; is that correct?

23   A.    Correct.

24   Q.    And it is your understanding that that's an

25 independent company?

1     A.   It's my understanding that it's a company

2  that was hired by yourself and the campaign to make

3  the robocalls.

4     Q.   Okay.  And on what basis do you say that it

5  was hired by me personally?

6     A.   You recorded the calls at issue.

7     Q.   But that wouldn't necessarily mean that I

8  hired them, would it?

9     A.   It would at least lend to the inference that

10  the calls were authorized by you.

11     Q.   Did you do anything to investigate whether

12  or not I had hired this company to do these -- this

13  calling?

14     A.   Yes.

15     Q.   And what investigation did you do?

16     A.   I spoke to the counsel for Tele-Town Hall.

17     Q.   And who was that?

18     A.   I don't recall their name off the top of my

19  head.

20     Q.   And when did you speak to the counsel for

21  Tele-Town Hall?

22     A.   Shortly before the filing of the complaint.

23     Q.   And that was in October of 2022?

24     A.   If that's shortly before the filing of the

25  complaint, then yes.

1    Q.   Do you know when you filed the complaint?

2    A.   Sometime in 2022.  I don't know the exact

3    date.

4    Q.   You don't know when.  Okay.

5         And when you spoke to counsel, what did you

6    ask them?

7    A.   I inquired to ascertain the nature of the

8    calls, why they were placed to me and who authorized

9    the calls.

10   Q.   Now, when you say authorized, authorized or

11   hired and paid for, what do you mean by authorized?

12   A.   Authorized and hired and paid for, if they

13   are, in fact, the same person, if they're a different

14   person.  I wanted to get to the bottom of why I was

15   receiving these unwanted calls.

16   Q.   And what did counsel tell you?  Who did

17   counsel tell you authorized the calls?

18   A.   Counsel stated that Tele-Town Hall was hired

19   by --

20   Q.   No, I didn't ask that.  I asked who did they

21   tell you authorized the calls.

22   A.   They didn't directly tell me who authorized

23   the calls.

24   Q.   And who did they tell you hired them to make

25   the calls?

1      A.    Charles Gerow and the Gerow campaign.

2      Q.    They told you that Charles Gerow hired them

3 to do this?  They told you that?

4      A.    They said that they were speaking to

5 Mr. Gerow and the Gerow campaign.

6      Q.    Counsel for Tele-Town Hall told you that

7 they spoke to me personally?

8      A.    They -- I don't recall what the e-mail said

9 exactly.  Something to the effect of Charles Gerow

10 and the Gerow campaign or Charles Gerow and his folks

11 at the Gerow campaign or something to that effect.

12     Q.    Do you have that e-mail?

13     A.    Yes.

14     Q.    Are you willing to produce that e-mail?

15     A.    I will need to review it for potential

16 privilege and other issues.

17     Q.    What privilege would exist?

18     A.    There are confidential settlement

19 communications under Rule 408 for one.

20     Q.    So you had a settlement arrangement with

21 Tele-Town Hall?

22     A.    That's correct.

23     Q.    And they paid you?

24     A.    That's correct.

25     Q.    How much did they pay you?

```
 1        A.    I don't recall.
 2        Q.    You don't recall, Mr. Perrong, how much they
 3   paid you?  Do you really expect us to believe that?
 4        A.    I don't recall exactly.  And furthermore,
 5   I'm going to object on the grounds that it's -- even
 6   if I did recall, that the amount would be protected
 7   under Rule 408.
 8        Q.    We can take that up with a judge if you
 9   would like to.
10        A.    I don't recall at this moment how much they
11   paid me.  That's my answer.  And furthermore, I'll
12   note my objection that it's protected under Rule 408.
13        Q.    But they did pay you?  They did pay you?
14        A.    Yes, they did.
15        Q.    So on that basis, you determined not to sue
16   them?
17        A.    The agreement included a release of my
18   claims against Tele-Town Hall.
19        Q.    And you don't recall the name of the counsel
20   that you spoke to?
21        A.    I only recall that he was at the law firm of
22   ArentFox Schiff.
23        Q.    Let me give you a second to see if you can
24   remember that name.
25        A.    I won't remember.
```

1    Q.   And that counsel told you that he had spoken

2    to me personally?

3    A.   I don't recall exactly what the counsel

4    said.  As I stated, the counsel stated something to

5    the effect of he spoke with the folks over at the

6    Gerow -- Gerow and the folks over at the Gerow

7    campaign.

8    Q.   Did he tell you that he spoke to,

9    quote/unquote, the folks or did he tell you that he

10   spoke with me personally?

11   A.   Again, I'm going to object to the form

12   because --

13   Q.   The form is very simple.  Did he tell you

14   that he spoke with, quote/unquote, the folks at the

15   Gerow campaign or that he spoke with me personally?

16   A.   I recall the fact that the e-mail had the

17   name Gerow in it and it had the term the folks in it.

18   Exactly what the e-mail said, I don't have it in

19   front of me.  I can't recall with specificity exactly

20   what the e-mail said.

21   Q.   And did you ask him to define for you who

22   the folks were?

23   A.   No.

24   Q.   Why not?

25   A.   I didn't think it was important at the time.

1    Q.    You didn't think it was important to

2    determine who actually authorized and paid for these

3    calls?

4    A.    This was in the context of settlement

5    negotiations.  And Mr. -- the attorney over --

6    Q.    Mr. what's his name?

7    A.    Mr. Arent -- was going to say Mr. ArentFox

8    Schiff, somebody over at the ArentFox Schiff law firm

9    who was attempting to negotiate a global settlement

10   on behalf of the Gerow campaign and Tele-Town --

11   Q.    Wait a minute.  You're telling me that an

12   attorney for ArentFox Schiff indicated to you that he

13   was trying to settle on behalf of the Gerow campaign?

14   A.    That's correct.

15   Q.    I'm going to need to know the name of that

16   attorney.

17         And you indicated that this was a settlement

18   conversation?

19   A.    These were settlement negotiations.  And I

20   believe that the substance of those conversations was

21   that there was a draft settlement agreement that was

22   sent over to the Gerow campaign and that the Gerow

23   campaign was going to take a look at it, but they

24   were coming up against some campaign financing

25   deadlines and were going to get back to me on whether

1    or not they would be willing to settle.

2        Q.   Now, the question that I asked you

3    originally was whether or not you had done any

4    investigative work.  This was a settlement

5    conversation that apparently was started by this

6    attorney at ArentFox Schiff; is that correct?

7        A.   That's correct.

8        Q.   So you didn't do any independent

9    investigation into this, did you?

10       A.   No, I sent an investigative --

11       Q.   No is fine.

12       A.   I sent an --

13       Q.   No is fine.

14       A.   Let me correct --

15       Q.   No is fine.

16       A.   Let me correct --

17       Q.   I asked you if you had --

18       A.   I misspoke.

19       Q.   I asked you if you had made any independent

20   investigation, and you said no.

21       A.   I did make an independent investigation.

22       Q.   Well, why did you say no when I asked you if

23   you made any independent investigation?

24       A.   Because I misspoke.  Let me finish.  I made

25   an independent investigation.  I spoke to -- I sent

1  an investigative e-mail to Tele-Town Hall.  As a

2  result of that investigative e-mail, I received

3  contact from this attorney at ArentFox Schiff.

4      Q.   What was the nature of the, quote/unquote,

5  investigative e-mail?

6      A.   I was seeking any information they had on

7  possible consent to contact my number with a

8  pre-recorded call.

9      Q.   Anything other than that?

10     A.   I also requested not to be called in the

11  future.

12     Q.   Okay.  But you didn't ask any questions

13  beyond that?

14     A.   I also requested a copy of Tele-Town Hall's

15  do not call policy.

16     Q.   Okay.  But you didn't ask any questions

17  beyond that?

18     A.   I also asked whether or not there was any

19  party that they contend placed the calls or if I, for

20  some reason, might have had the wrong company if that

21  was their contentions.

22     Q.   Anything else that you asked them?

23     A.   Not that I recall.

24     Q.   Now, you allege in your complaint that I

25  personally, Charles R. Gerow, quote, directed the

1    illegal robocalls complained of.

2         On what basis do you make that averment?

3    A.    The fact that the calls were recorded by you

4    and that they were sent from your campaign, so it

5    makes sense that because they were sent from your

6    campaign, I would not see any reason why you would

7    not authorize something that your campaign would send

8    out.

9    Q.    Now, the message that was recorded using my

10   voice could have been used anywhere; correct?

11   A.    I'm going to object to the form.  I don't

12   understand what you mean used anywhere.  It was

13   obviously a pre-recorded voice.

14   Q.    I pre-recorded all sorts of messages every

15   single day.

16        Your averment says that Defendant Gerow came

17   on the line and said, quote, I'm a strong supporter

18   of the Second Amendment and life member of the

19   National Rifle Association.  And if anybody wants to

20   see how deeply committed I am to the issue, they can

21   go to my website, CharlieForGovernor.com, and see a

22   picture of my 98-year-old mother holding her AR-15.

23        Was there anything else that my voice

24   recording had on that message?

25   A.    There might have been other recordings on

1    the call.

2        Q.   You don't allege any though, do you?

3        A.   I do not allege anything in the limited fact

4    pleading of the complaint, no.

5        Q.   And that message could have been used

6    anywhere, couldn't it?

7        A.   As I recall, the call lasted for somewhere

8    around --

9        Q.   I didn't ask how long the call lasted for, I

10   asked whether or not -- we'll come back to that.

11            I asked whether or not that call, that

12   message, could have been used anywhere.

13       A.   That message could have been --

14       Q.   It could have been used anywhere, couldn't

15   it?

16       A.   I recall in your deposition that you stated

17   that you recorded that message for the call.

18       Q.   Now, you said the call lasted an hour.

19       A.   It's my understanding from my communications

20   with Tele-Town Hall that the total duration of the

21   town hall was around about an hour.

22       Q.   Did you stay on the line for that entire

23   hour?

24       A.   No.

25       Q.   How long did you stay on the line?

1    A.   I don't recall.

2    Q.   So did you do any investigation at all into

3    whether or not I personally, quote, directed and

4    authorized the selection of the actual numbers to be

5    called?

6    A.   Yes.

7    Q.   And where did you do that investigation?

8    A.   Through my discussions with Tele-Town Hall,

9    it's my understanding that Tele-Town Hall does not

10   itself provide lists of numbers.  It is provided

11   lists of telephone numbers by campaigns, by callers

12   and the various sorts of persons that would direct

13   the calls.  And they essentially send out whatever

14   lists of calls they're instructed to.

15   Q.   And did you ask where they received the list

16   of calls that they made on behalf of the Charlie for

17   Governor campaign?

18   A.   No.

19   Q.   You didn't ask that?

20   A.   No.

21   Q.   So on what basis would you say that I

22   personally directed and authorized the selection of

23   those calls?

24   A.   It was your campaign that engaged with

25   Tele-Town Hall and provided them a list.

1   Q.   Wait a minute.  How do you know that they

2   provided them the list?

3   A.   Because Tele-Town Hall does not itself

4   provide lists, so that list had to come from

5   somewhere outside Tele-Town Hall.  And given that

6   Tele-Town Hall was hired by whoever it was hired by,

7   those individuals, as I allege in the complaint the

8   Gerow campaign, which you headed, that made the

9   calls -- that sent -- rather that sent the calling

10  lists to Tele-Town Hall.

11  Q.   You didn't do any investigation at all, did

12  you?

13  A.   I did investigation.

14  Q.   Tell me again what investigation you did to

15  determine where the lists came from that Tele-Town

16  Hall called on May 6 and May 7 on behalf of the

17  Charlie for Governor campaign.

18  A.   Tele-Town Hall indicated to me that the

19  lists did not originate from them and that their

20  client, the Gerow campaign, provided the list to

21  call.

22  Q.   Okay.  And when you say the Gerow campaign,

23  who at the Gerow campaign?

24  A.   That information was not provided to me.

25  Q.   Okay.  So you have no basis on which to say

1    that I personally did it, do you?

2        A.    I do.

3        Q.    What's that basis?

4        A.    I'm going to object to the form.

5        Q.    What is the basis upon which you would

6    allege that Charles R. Gerow personally directed and

7    authorized the selection of the calls to be made?

8        A.    The fact that Charles Gerow was the

9    candidate running under the Charles for Governor or

10   Charlie for Governor campaign and the fact that if I

11   was running a campaign --

12       Q.    No, no, no, no.  Please don't conjecture

13   about what you would do.

14            I'm asking again specifically, Mr. Perrong,

15   on what basis did you make the averment that

16   Charles R. Gerow personally directed and authorized

17   the selection of the calls to be made on May 6 or

18   May 7th?

19       A.    I'm going to object to the form, and common

20   knowledge of how political campaigns operate.

21       Q.    And you're an expert in how campaigns

22   operate?

23       A.    No.

24       Q.    Okay.  And did you consult an expert prior

25   to filing this complaint?

```
 1        A.    No.  I relied on my common knowledge, basis
 2   and experience.
 3        Q.    Okay.  But you have no specific knowledge
 4   whatsoever as to whether or not Charles R. Gerow
 5   personally authorized or directed these calls to be
 6   made?
 7        A.    Apart from the fact that Charles R. Gerow
 8   recorded the calls, no.
 9        Q.    Okay.  And had you ever had any contact with
10   Tele-Town Hall prior to the issues complained of in
11   this matter?
12        A.    No.
13        Q.    You had never dealt with Tele-Town Hall
14   previous to this complaint?
15        A.    Not to my recollection, no.
16        Q.    There are several parties that are named
17   defendants in this action.  Charlie for Governor,
18   have you made actual service on Charlie for Governor?
19        A.    Yes.
20        Q.    When was that service made?
21        A.    I don't recall.  It would be on the docket.
22        Q.    And how was it made?
23        A.    Personally.
24        Q.    And to whom was it made?
25        A.    To your -- I -- I don't recall.  I was going
```

1   to say to yourself, but at this moment I'm not a

2   hundred percent sure.  I need to check the return of

3   service, so I don't want to say.

4        Q.   Service on myself would not be service on

5   Charlie for Governor, to be very clear about that,

6   would it?

7        A.   I would need to look at the rules and see

8   whether or not it would, but it's my understanding

9   that if you were served personally, that would

10   constitute good service on the Charles for Governor

11   campaign.

12       Q.   Now, you allege in your complaint that

13   Charlie for Governor was a political action

14   committee; is that correct?

15       A.   Yes.  Or actually, let me rephrase.  I

16   believe that that is an allegation in the complaint.

17   I'm not a hundred percent sure exactly how the

18   political action committees operate in Pennsylvania,

19   the exact precise terminology of that.

20       Q.   Right.  So you made that averment without

21   doing any investigation whatsoever as to how Charlie

22   for Governor was legally constituted, didn't you?

23       A.    No.  I investigated and I saw that it was

24   registered as a committee, Charlie for Governor

25   Committee, with the Pennsylvania Department of State.

Q.   Right.  But was it registered as a political action committee?

A.   It's my understanding that it was registered as a political action committee with the Pennsylvania Department of State.

Q.   That's your understanding?

A.   Yes.

Q.   As a lawyer, that's your understanding?

A.   I was not a lawyer at the time that I filed the complaint.

Q.   You were in your final year of law school?

A.   Correct.

Q.   And you didn't do any due diligence to determine how Charlie for Governor was constituted legally?

A.   I'm going to object to the form as asked and answered.  Furthermore, I did investigate how Charlie for Governor was constituted, as I said, by going onto the Pennsylvania Department of State's website and verifying that it was an authorized political action committee for the purpose of your candidacy for governor.

Q.   And at the time you filed this complaint, did you do any investigative work to determine whether or not Charlie for Governor still existed?

1     A.   Yes.

2     Q.   And at the time of the filing of this

3 complaint, did it still exist?

4     A.   According to the documents I reviewed on the

5 Secretary of State's website, I did not see any

6 information to indicate that it was closed or

7 dissolved in any manner.

8     Q.   When did you do that?

9     A.   Sometime shortly before the filing of the

10 complaint.

11     Q.   So sometime in October of 2022?

12     A.   Or perhaps in September or August of 2022.

13     Q.   But in August, September or October, your

14 testimony is that you saw nothing on the Department

15 of State's website to indicate that Charlie for

16 Governor no longer was in existence?

17     A.   Not to my recollection.

18     Q.   Not to your recollection or do you have a

19 recollection?

20     A.   I don't recall exactly when it was, but I

21 recall that I did not see anything to indicate that

22 it was administratively dissolved.  And even if it

23 was, I still would have filed the suit because,

24 again, dissolving an entity does nothing if the

25 entity is still liable.  But I -- I believe it was

1    still active in some capacity at the time that I

2    checked.

3        Q.    And on what basis do you believe it was

4    still operative in some capacity?

5        A.    There was nothing to indicate that it was

6    closed or dissolved.

7        Q.    Nothing?

8        A.    There was nothing on the website to indicate

9    that it was closed or dissolved.

10       Q.    And Marguerite Luksik, otherwise known as

11   Peg Luksik, is also a named defendant; is that

12   correct?

13       A.    Correct.

14       Q.    And have you made service on her?

15       A.    No.

16       Q.    And you're familiar with the provisions of

17   the rules regarding service?

18       A.    Yes.

19       Q.    You indicated that the first suit you filed

20   under the TCPA was filed in a magisterial district

21   court; is that correct?

22       A.    Correct.

23       Q.    Why did you file this in the United States

24   District Court for the Eastern District of

25   Pennsylvania?

A.    There's federal-questioned jurisdiction over

the claims at issue.

Q.    Why didn't you file it in the magisterial

district court?

A.    Because there's federal issues.

Q.    Weren't there federal issues in the prior

complaint?

A.    State courts have concurrent jurisdiction

with federal courts over these claims.

Q.    I appreciate the law lesson, but you filed

an action under the TCPA federal statute in

magisterial district court.  Why didn't you file this

one in magisterial district court?

A.    I'm going to object as to privilege.

Q.    What privilege did you have in October of

2022?

A.    Pro se litigation and trial preparation

privilege.

Q.    I don't think I have anything further.

I assume that you want to read and sign?

A.    Read and sign, 30 days, please, with no mini

transcript.  Just the full version, please.

Could we get a formal adjournment on the

record, please, stating that the deposition is

concluded?  I don't think that it was clear.

1          MR. GERROW:   Sorry.   It is now 10:10 a.m.

2     The deposition of Andrew Perrong, plaintiff in this

3     matter, is now concluded.

4          (The deposition concluded at 10:10 a.m.)

1  COUNTY OF LANCASTER:  SS

2  COMMONWEALTH OF PENNSYLVANIA :

3      I, Cathy Mertz, Registered Merit Reporter,

4  Certified Realtime Reporter and Notary Public, do

5  hereby certify that personally appeared before me

6  ANDREW R. PERRONG, ESQUIRE, the witness, being by me

7  first duly sworn or affirmed to testify to the truth,

8  the whole truth and nothing but the truth, in answer

9  to the oral questions propounded to him by the

10  attorneys for the respective parties, testified as

11  set forth in the foregoing deposition.

12      I further certify that before the taking of said

13  deposition, the above witness was duly sworn or

14  affirmed, that the questions and answers were taken

15  down stenographically by Cathy Mertz, RMR, CRR,

16  Lancaster, PA, approved and agreed to, and afterwards

17  reduced to print by means of computer-aided

18  transcription under the direction of the aforesaid

19  reporter.

20      In testimony whereof, I have hereunto subscribed

21  my hand this 4th day of December 2023.

22

23                          _____
                           Cathy S. Mertz, RMR, CRR
24                          Notary Public
                           My Commission Expires
25                          January 23, 2024.

**10:10** [2] - 42:1, 42:4
**10th** [2] - 6:19, 6:22
**11** [1] - 16:6
**131** [1] - 5:21
**140** [1] - 15:13
**150** [6] - 15:8, 15:9, 15:10, 15:11, 17:14
**1657** [1] - 5:20
**17050** [1] - 2:6
**17602** [1] - 1:20
**19006** [1] - 6:1
**19038** [1] - 2:3
**19046** [1] - 5:21
**20** [1] - 14:23
**200** [1] - 17:16
**2003** [1] - 7:21
**2014** [1] - 13:5
**2015** [3] - 13:1, 13:5, 13:11
**2016** [5] - 13:19, 13:21, 13:24, 14:8, 14:17
**2017** [3] - 14:20, 14:22, 15:3
**2018** [3] - 14:24, 15:1, 15:4
**2021** [1] - 16:24
**2022** [9] - 16:10, 16:18, 16:22, 23:23, 24:2, 39:11, 39:12, 41:16
**2023** [9] - 1:17, 6:19, 6:22, 15:20, 16:11, 16:13, 16:18, 16:21, 43:21
**2024** [1] - 43:25
**215-947-XXXX** [2] - 7:3, 7:19
**223-322-0908** [2] - 11:13, 12:8
**23** [1] - 43:25
**2657** [1] - 2:3
**28** [1] - 1:17, 1:20
**2:22-cv-04013** [1] - 1:4
**30** [1] - 41:21
**333687** [1] - 6:21
**3551** [1] - 5:25
**408** [3] - 25:19, 26:7, 26:12
**4725** [1] - 2:5
**4th** [1] - 43:21
**6** [4] - 8:22, 9:15, 34:16, 35:17
**7** [3] - 8:22, 9:15, 34:16
**7:30** [1] - 11:14
**7th** [2] - 11:13, 35:18
**8:30** [1] - 11:14

**98-year-old** [1] - 31:22
**9:30** [1] - 1:18
**a.m** [3] - 1:18, 42:1, 42:4
**ability** [1] - 5:13
**according** [2] - 12:6, 39:4
**acquire** [2] - 7:20, 7:23
**acquired** [1] - 7:21
**action** [7] - 36:17, 37:13, 37:18, 38:2, 38:4, 38:21, 41:11
**active** [2] - 10:2, 40:1
**actual** [2] - 33:4, 36:18
**addition** [2] - 17:6, 22:19
**address** [3] - 5:20, 6:3, 6:4
**adjournment** [1] - 41:23
**administratively** [1] - 39:22
**advocacy** [1] - 6:7
**affirmed** [3] - 4:2, 43:7, 43:14
**aforesaid** [1] - 43:18
**afterwards** [1] - 43:16
**aggregate** [1] - 15:14
**agreed** [1] - 43:16
**agreement** [2] - 26:17, 28:21
**aided** [1] - 43:17
**alcohol** [1] - 5:12
**allegation** [1] - 37:16
**allege** [8] - 9:21, 22:12, 30:24, 32:2, 32:3, 34:7, 35:6, 37:12
**alleges** [1] - 11:11
**Amendment** [1] - 31:18
**amount** [3] - 15:14, 19:1, 26:6
**AND** [1] - 1:8
**ANDREW** [5] - 1:4, 2:2, 4:1, 5:17, 43:6
**Andrew** [6] - 1:14, 3:2, 4:7, 4:10, 5:17, 42:2
**Android** [1] - 7:16
**answer** [12] - 4:23, 5:4, 10:2, 18:20, 19:11, 19:17, 20:8, 20:9, 21:6, 22:5, 26:11, 43:8
**answered** [7] - 9:3,

9:5, 9:6, 9:15, 21:23, 22:9, 38:17
**answers** [2] - 4:17, 43:14
**apart** [1] - 36:7
**APPEARANCES** [1] - 2:1
**appeared** [1] - 43:5
**appreciate** [1] - 41:10
**appropriately** [1] - 18:18
**approved** [1] - 43:16
**AR-15** [1] - 31:22
**Arent** [1] - 28:7
**ArentFox** [6] - 26:22, 28:7, 28:8, 28:12, 29:6, 30:3
**arrangement** [1] - 25:20
**ascertain** [1] - 24:7
**associated** [1] - 22:2
**associating** [1] - 22:11
**Association** [2] - 1:19, 31:19
**assume** [1] - 41:20
**assumed** [1] - 4:24
**attached** [3] - 8:2, 8:4, 8:15
**attachment** [1] - 8:7
**attempting** [1] - 28:9
**attorney** [11] - 6:11, 6:12, 6:20, 15:24, 16:5, 17:23, 28:5, 28:12, 28:16, 29:6, 30:3
**attorneys** [1] - 43:10
**audibly** [1] - 4:17
**August** [2] - 39:12, 39:13
**authorize** [2] - 12:15, 31:7
**authorized** [16] - 23:10, 24:8, 24:10, 24:11, 24:12, 24:17, 24:21, 24:22, 28:2, 33:4, 33:22, 35:7, 35:16, 36:5, 38:20
**automated** [2] - 9:24, 10:23
**automatic** [1] - 22:13
**Avenue** [1] - 2:3
**aver** [1] - 10:15
**averment** [7] - 11:10, 12:6, 22:16, 31:2, 31:16, 35:15, 37:20
**aware** [1] - 9:10
**Bar** [1] - 1:19, 6:15, 6:18

**basic** [1] - 21:12
**basis** [12] - 9:21, 22:16, 23:4, 26:15, 31:2, 33:21, 34:25, 35:3, 35:5, 35:15, 36:1, 40:3
**become** [1] - 6:17
**began** [1] - 12:6
**beginning** [2] - 16:18, 20:21
**behalf** [5] - 15:25, 28:10, 28:13, 33:16, 34:16
**between** [2] - 11:13, 14:23
**beyond** [3] - 12:12, 30:13, 30:17
**bottom** [1] - 24:14
**break** [2] - 5:2, 5:4
**brought** [1] - 21:18
**business** [1] - 7:1
**BY** [1] - 4:4
**caller** [5] - 10:9, 10:10, 11:2, 11:3, 11:8
**callers** [1] - 33:11
**campaign** [26] - 11:22, 23:2, 25:1, 25:5, 25:10, 25:11, 27:7, 27:15, 28:10, 28:13, 28:22, 28:23, 28:24, 31:4, 31:6, 31:7, 33:17, 33:24, 34:8, 34:17, 34:20, 34:22, 34:23, 35:10, 35:11, 37:11
**campaigns** [3] - 33:11, 35:20, 35:21
**candidacy** [1] - 38:21
**candidate** [1] - 35:9
**capacity** [3] - 4:6, 40:1, 40:4
**Carmel** [1] - 2:3
**carry** [1] - 8:15
**Cathy** [4] - 1:22, 43:3, 43:15, 43:23
**cell** [1] - 8:2
**Certified** [1] - 1:23, 43:4
**certify** [2] - 43:5, 43:12
**cetera** [1] - 4:18
**characterization** [1] - 21:15
**CHARLES** [2] - 1:7, 2:5
**Charles** [15] - 1:16, 2:5, 4:8, 25:1, 25:2, 25:9, 25:10, 30:25,

35:6, 35:8, 35:9, 35:16, 36:4, 36:7, 37:10
**Charlie** [17] - 4:5, 4:7, 11:17, 12:11, 33:16, 34:17, 35:10, 36:17, 36:18, 37:5, 37:13, 37:21, 37:24, 38:14, 38:17, 38:25, 39:15
**CHARLIE** [1] - 1:7
**CharlieForGoverno r.com** [1] - 31:21
**check** [1] - 37:2
**checked** [1] - 40:2
**choice** [2] - 11:16, 12:10
**claims** [3] - 26:18, 41:2, 41:9
**clarification** [1] - 4:23
**clear** [2] - 37:5, 41:25
**client** [1] - 34:20
**closed** [3] - 39:6, 40:6, 40:9
**coming** [1] - 28:24
**Commission** [1] - 43:24
**committed** [1] - 31:20
**committee** [5] - 37:14, 37:24, 38:2, 38:4, 38:21
**Committee** [1] - 37:25
**committees** [1] - 37:18
**common** [4] - 22:1, 22:10, 35:19, 36:1
**COMMONWEALTH** [1] - 43:2
**communications** [2] - 25:19, 32:19
**company** [8] - 7:24, 7:25, 18:1, 18:4, 22:25, 23:1, 23:12, 30:20
**complained** [2] - 31:1, 36:10
**complaint** [20] - 7:2, 7:8, 7:13, 7:19, 22:21, 23:22, 23:25, 24:1, 30:24, 32:4, 34:7, 35:25, 36:14, 37:12, 37:16, 38:10, 38:23, 39:3, 39:10, 41:7
**computer** [5] - 6:25, 18:1, 18:4, 43:17
**computer-aided** [1] -

43:17
**concluded** [3] - 41:25, 42:3, 42:4
**concurrent** [1] - 41:8
**conducting** [1] - 12:9
**confidential** [1] - 25:18
**Congressman** [2] - 11:14, 12:8
**conjecture** [1] - 35:12
**connection** [1] - 8:20
**consent** [1] - 30:7
**consider** [7] - 19:7, 19:8, 19:12, 19:14, 19:17, 19:23, 20:6
**constitute** [1] - 37:10
**constituted** [3] - 37:22, 38:14, 38:18
**consult** [1] - 35:24
**consumer** [2] - 6:6, 6:7
**contact** [3] - 30:3, 30:7, 36:9
**contend** [1] - 30:19
**contentions** [1] - 30:21
**context** [1] - 28:4
**conversation** [4] - 10:11, 12:6, 28:18, 29:5
**conversations** [2] - 9:12, 28:20
**copper** [1] - 8:10
**copy** [1] - 30:14
**correct** [39] - 4:20, 9:16, 9:19, 9:20, 10:5, 10:24, 10:25, 13:18, 13:20, 17:3, 17:5, 17:8, 17:9, 20:23, 20:25, 21:2, 21:7, 21:12, 21:14, 21:15, 21:16, 22:14, 22:15, 22:22, 22:23, 25:22, 25:24, 28:14, 29:6, 29:7, 29:14, 29:16, 31:10, 37:14, 38:12, 40:12, 40:13, 40:21, 40:22
**correctly** [1] - 9:25
**cottage** [2] - 17:19, 17:24
**counsel** [11] - 23:16, 23:20, 24:5, 24:16, 24:17, 24:18, 25:6, 26:19, 27:1, 27:3, 27:4
**count** [1] - 7:12
**County** [1] - 1:19

**COUNTY** [1] - 43:1
**course** [1] - 18:6
**Court** [1] - 40:24
**COURT** [1] - 1:1
**court** [6] - 13:8, 13:10, 40:21, 41:4, 41:12, 41:13
**courts** [2] - 41:8, 41:9
**created** [1] - 17:18
**CRR** [2] - 43:15, 43:23
**date** [7] - 8:21, 9:23, 10:14, 10:16, 10:18, 13:4, 24:3
**Date** [1] - 1:17
**dates** [2] - 9:2, 10:15
**days** [1] - 41:21
**deadlines** [1] - 28:25
**dealt** [1] - 36:13
**December** [1] - 43:21
**deeply** [1] - 31:20
**defendant** [2] - 4:6, 40:11
**Defendant** [1] - 31:16
**defendants** [2] - 22:12, 36:17
**Defendants** [1] - 1:9
**define** [1] - 27:21
**Department** [4] - 37:25, 38:5, 38:19, 39:14
**deposed** [1] - 4:11
**Deposition** [1] - 1:12
**deposition** [9] - 4:9, 4:13, 19:10, 32:16, 41:24, 42:2, 42:4, 43:11, 43:13
**determine** [4] - 28:2, 34:15, 38:14, 38:24
**determined** [1] - 26:15
**device** [1] - 8:15
**dialing** [1] - 22:13
**different** [4] - 6:2, 7:14, 17:23, 24:13
**diligence** [1] - 38:13
**direct** [1] - 33:12
**directed** [6] - 30:25, 33:3, 33:22, 35:6, 35:16, 36:5
**direction** [1] - 43:18
**directly** [1] - 24:22
**disclosures** [1] - 11:22
**discovery** [1] - 18:17
**discussed** [1] - 20:20

**discussions** [1] - 33:8
**dissolved** [4] - 39:7, 39:22, 40:6, 40:9
**dissolving** [1] - 39:24
**district** [6] - 13:8, 13:10, 40:20, 41:4, 41:12, 41:13
**DISTRICT** [2] - 1:1, 1:1
**District** [2] - 40:24
**docket** [1] - 36:21
**documents** [1] - 39:4
**done** [1] - 29:3
**down** [1] - 43:15
**draft** [1] - 28:21
**drugs** [1] - 5:12
**due** [1] - 38:13
**duly** [3] - 4:1, 43:7, 43:13
**duration** [1] - 32:20
**e-mail** [9] - 25:8, 25:12, 25:14, 27:16, 27:18, 27:20, 30:1, 30:2, 30:5
**East** [1] - 1:20
**Eastern** [1] - 40:24
**EASTERN** [1] - 1:1
**effect** [3] - 25:9, 25:11, 27:5
**eight** [1] - 18:7
**either** [1] - 8:22
**employed** [3] - 6:8, 6:10, 6:23
**end** [2] - 11:22, 16:18
**engaged** [1] - 33:24
**English** [3] - 19:21, 22:2, 22:10
**enjoyment** [1] - 9:22
**entails** [1] - 4:14
**entire** [2] - 10:7, 32:22
**entities** [1] - 11:24
**entity** [3] - 22:22, 39:24, 39:25
**especially** [1] - 9:8
**Esquire** [2] - 1:14, 1:16
**ESQUIRE** [4] - 2:2, 2:5, 4:1, 43:6
**essentially** [1] - 33:13
**et** [1] - 4:18
**evening** [1] - 18:3
**exact** [3] - 14:19, 24:2, 37:19
**exactly** [7] - 25:9, 26:4, 27:3, 27:18,

27:19, 37:17, 39:20
**Examination** [1] - 3:3
**EXAMINATION** [1] - 4:3
**examined** [1] - 4:2
**exist** [2] - 25:17, 39:3
**existed** [1] - 38:25
**existence** [1] - 39:16
**expect** [1] - 26:3
**experience** [1] - 36:2
**expert** [2] - 35:21, 35:24
**Expires** [1] - 43:24
**fact** [7] - 24:13, 27:16, 31:3, 32:3, 35:8, 35:10, 36:7
**facts** [1] - 12:18
**fair** [6] - 14:10, 14:12, 17:14, 17:16, 17:18, 18:25
**Fairway** [1] - 5:20
**familiar** [2] - 4:13, 40:16
**federal** [7] - 18:9, 18:12, 41:1, 41:5, 41:6, 41:9, 41:11
**federal-questioned** [1] - 41:1
**file** [17] - 13:6, 13:11, 13:19, 13:21, 14:20, 14:22, 14:24, 15:1, 16:22, 16:24, 17:1, 17:12, 18:9, 18:12, 40:23, 41:3, 41:12
**filed** [28] - 12:21, 12:23, 12:24, 13:2, 13:14, 13:24, 14:2, 14:7, 14:17, 15:3, 15:4, 15:6, 15:7, 15:20, 15:22, 16:5, 16:9, 16:12, 16:17, 16:21, 17:4, 24:1, 38:9, 38:23, 39:23, 40:19, 40:20, 41:10
**filing** [8] - 12:19, 17:6, 17:19, 23:22, 23:24, 35:25, 39:2, 39:9
**final** [1] - 38:11
**financing** [1] - 28:24
**fine** [3] - 29:11, 29:13, 29:15
**finish** [1] - 29:24
**firm** [2] - 26:21, 28:8
**first** [7] - 11:10, 12:23, 13:2, 20:16, 21:18, 40:19, 43:7
**five** [8] - 7:12, 7:14, 13:16, 13:17, 14:10,

16:1, 16:2, 16:15
**folks** [8] - 17:11, 25:10, 27:5, 27:6, 27:9, 27:14, 27:17, 27:22
**follows** [1] - 4:2
**FOR** [2] - 1:1, 1:7
**forced** [1] - 10:1
**foregoing** [1] - 43:11
**form** [14] - 4:17, 19:15, 21:5, 21:8, 21:9, 21:10, 21:11, 22:18, 27:11, 27:13, 31:11, 35:4, 35:19, 38:16
**formal** [1] - 41:23
**forth** [1] - 43:11
**four** [1] - 7:11
**free** [1] - 12:9
**freelance** [1] - 6:25
**front** [4] - 10:10, 11:4, 16:19, 27:19
**full** [6] - 17:22, 17:23, 17:25, 18:2, 18:4, 41:22
**full-time** [5] - 17:22, 17:23, 17:25, 18:2, 18:4
**functionality** [1] - 22:19
**furthermore** [3] - 26:4, 26:11, 38:17
**future** [1] - 30:11
**G.T** [2] - 11:14, 12:8
**general** [1] - 4:16
**generation** [1] - 22:19
**GEROW** [2] - 1:8, 2:5
**Gerow** [35] - 1:16, 4:5, 4:7, 4:8, 11:17, 12:11, 25:1, 25:2, 25:5, 25:9, 25:10, 25:11, 27:6, 27:15, 27:17, 28:10, 28:13, 28:22, 30:25, 31:16, 34:8, 34:20, 34:22, 34:23, 35:6, 35:8, 35:16, 36:4, 36:7
**Gerow.....................4** [1] - 3:3
**GERROW** [2] - 4:4, 42:1
**gestures** [1] - 4:18
**given** [2] - 14:2, 34:5
**Glensdale** [1] - 2:3
**global** [1] - 28:9
**GOVERNOR** [1] - 1:7
**governor** [3] - 11:17, 12:11, 38:22
**Governor** [16] - 4:7,

33:17, 34:17, 35:9,
35:10, 36:17, 36:18,
37:5, 37:10, 37:13,
37:22, 37:24, 38:14,
38:18, 38:25, 39:16
**grounds** [1] - 26:5
**Hall** [20] - 22:22,
23:16, 23:21, 24:18,
25:6, 25:21, 26:18,
30:1, 32:20, 33:8,
33:9, 33:25, 34:3,
34:5, 34:6, 34:10,
34:16, 34:18, 36:10,
36:13
**hall** [3] - 11:15, 12:9,
32:21
**Hall's** [1] - 30:14
**hand** [2] - 4:18,
43:21
**hang** [1] - 10:4
**head** [2] - 4:18,
23:19
**headed** [1] - 34:8
**heating** [1] - 10:1
**hello** [2] - 11:12,
12:7
**hereby** [1] - 43:5
**hereunto** [1] - 43:20
**hired** [11] - 23:2,
23:5, 23:8, 23:12,
24:11, 24:12, 24:18,
24:24, 25:2, 34:6
**holding** [1] - 31:22
**home** [1] - 10:19
**hosting** [1] - 11:15
**hot** [3] - 10:2, 10:6,
10:16
**hour** [2] - 32:18,
32:21, 32:23
**hours** [1] - 11:14
**household** [1] - 8:14
**hundred** [2] - 37:2,
37:17
**Huntingdon** [1] -
5:25
**ID** [1] - 6:20
**identified** [2] - 10:10,
11:3
**identify** [5] - 10:8,
11:2, 11:7, 12:2, 12:3
**identifying** [1] -
11:25
**illegal** [2] - 9:9, 31:1
**impair** [1] - 5:13
**impairment** [1] - 5:9
**impending** [1] - 5:4
**important** [2] -
27:25, 28:1
**IN** [1] - 1:1
**inbound** [1] - 9:8

**included** [1] - 26:17
**incorrect** [1] - 21:20
**independent** [6] -
22:25, 29:8, 29:19,
29:21, 29:23, 29:25
**INDEX** [1] - 3:1
**indicate** [6] - 5:3,
39:6, 39:15, 39:21,
40:5, 40:8
**indicated** [4] - 28:12,
28:17, 34:18, 40:19
**individually** [1] - 4:8
**individuals** [1] - 34:7
**industry** [2] - 17:19,
17:24
**inference** [1] - 23:9
**information** [3] -
30:6, 34:24, 39:6
**inquired** [1] - 24:7
**installing** [1] - 8:10
**instructed** [1] -
33:14
**instructions** [1] -
4:16
**interactive** [1] -
11:15
**interfered** [1] - 9:22
**internet** [1] - 8:20
**investigate** [4] -
12:19, 12:20, 23:11,
38:17
**investigated** [1] -
37:23
**investigation** [12] -
23:15, 29:9, 29:20,
29:21, 29:23, 29:25,
33:2, 33:7, 34:11,
34:13, 34:14, 37:21
**investigative** [6] -
29:4, 29:10, 30:1,
30:2, 30:5, 38:24
**involved** [2] - 12:15,
12:17
**IP** [4] - 7:17, 8:5, 8:9,
8:10
**iPhone** [1] - 7:16
**issue** [3] - 23:6,
31:20, 41:2
**issues** [5] - 12:17,
25:16, 36:10, 41:5,
41:6
**itself** [2] - 33:10,
34:3
**January** [1] - 43:25
**Jenkintown** [1] -
5:21
**job** [4] - 17:22,
17:23, 17:25, 18:2
**judge** [1] - 26:8
**jurisdiction** [2] -

41:1, 41:8
**knowledge** [3] -
35:20, 36:1, 36:3
**known** [1] - 40:10
**LANCASTER** [1] -
43:1
**Lancaster** [3] - 1:19,
1:20, 43:16
**landlines** [1] - 8:11
**language** [3] - 19:21,
22:2, 22:10
**lasted** [3] - 32:7,
32:9, 32:18
**law** [8] - 6:24, 18:1,
18:3, 26:21, 28:8,
38:11, 41:10
**LAW** [1] - 2:2
**lawsuits** [7] - 14:2,
14:7, 14:16, 15:5,
15:12, 15:22, 16:5
**lawyer** [2] - 38:8,
38:9
**leader** [2] - 11:12,
12:7
**least** [1] - 23:9
**leave** [1] - 10:2
**left** [1] - 10:6
**legally** [2] - 37:22,
38:15
**lend** [1] - 23:9
**less** [2] - 14:16, 15:9
**lesson** [1] - 41:10
**liability** [1] - 12:17
**liable** [1] - 39:25
**licensed** [2] - 6:14,
6:17
**life** [4] - 9:22, 11:12,
12:7, 31:18
**limited** [1] - 32:3
**line** [9] - 7:17, 8:13,
8:22, 9:18, 10:23,
11:18, 31:17, 32:22,
32:25
**lines** [1] - 7:17
**list** [6] - 7:2, 33:15,
33:25, 34:2, 34:4,
34:20
**listened** [1] - 10:7,
10:8
**lists** [7] - 33:10,
33:11, 33:14, 34:4,
34:10, 34:15, 34:19
**litigation** [3] - 6:7,
7:13, 41:17
**live** [6] - 5:22, 5:24,
5:25, 6:3, 11:15, 12:9
**LLC** [1] - 2:2
**local** [1] - 13:10
**look** [3] - 21:16,
28:23, 37:7

**Luksik** [5] - 4:8,
11:12, 12:7, 40:10,
40:11
**LUKSIK** [1] - 1:8
**magisterial** [6] -
13:7, 13:10, 40:20,
41:3, 41:12, 41:13
**mail** [10] - 6:4, 25:8,
25:12, 25:14, 27:16,
27:18, 27:20, 30:1,
30:2, 30:5
**manner** [1] - 39:7
**MARGUERITE** [1] -
1:8
**Marguerite** [2] - 4:8,
40:10
**matter** [6] - 4:6,
13:22, 14:3, 14:5,
36:11, 42:3
**mean** [4] - 19:19,
23:7, 24:11, 31:12
**meaning** [1] - 22:10
**means** [1] - 43:17
**Mechanicsburg** [1] -
2:6
**meeting** [2] - 11:16,
12:10
**member** [1] - 31:18
**memory** [1] - 5:9
**Merit** [2] - 1:22, 43:3
**Mertz** [4] - 1:22,
43:3, 43:15, 43:23
**message** [7] - 11:6,
31:9, 31:24, 32:5,
32:12, 32:13, 32:17
**messages** [1] -
31:14
**might** [3] - 12:16,
30:20, 31:25
**mini** [1] - 41:21
**minute** [2] - 28:11,
34:1
**misspoke** [2] -
29:18, 29:24
**moment** [2] - 26:10,
37:1
**money** [2] - 18:5,
19:1
**months** [1] - 16:6
**morning** [2] - 4:5,
5:7
**most** [2] - 8:9, 15:19
**mother** [1] - 31:22
**Mount** [1] - 2:3
**MR** [2] - 4:4, 42:1
**multiple** [4] - 6:5,
6:6, 8:25, 17:4
**name** [7] - 5:16,
23:18, 26:19, 26:24,
27:17, 28:6, 28:15

**named** [2] - 36:16,
40:11
**National** [1] - 31:19
**nature** [3] - 11:9,
24:7, 30:4
**necessarily** [1] -
23:7
**necessary** [1] - 20:5
**need** [10] - 4:17, 5:2,
11:6, 11:18, 12:3,
12:12, 25:15, 28:15,
37:2, 37:7
**negotiate** [1] - 28:9
**negotiations** [2] -
28:5, 28:19
**never** [1] - 36:13
**Notary** [3] - 1:23,
43:4, 43:24
**note** [1] - 26:12
**noted** [1] - 19:16
**notes** [1] - 21:16
**nothing** [6] - 39:14,
39:24, 40:5, 40:7,
40:8, 43:8
**November** [1] - 1:17
**nowadays** [1] - 8:9
**number** [18] - 6:20,
7:3, 7:12, 7:18, 7:19,
7:20, 7:21, 8:5, 8:16,
9:8, 14:3, 14:19, 20:4,
20:5, 22:3, 22:11,
22:18, 30:7
**numbers** [6] - 7:4,
7:7, 7:10, 7:12, 7:15,
33:4, 33:10, 33:11
**oath** [1] - 14:15
**object** [11] - 18:23,
19:15, 21:5, 21:8,
26:5, 27:11, 31:11,
35:4, 35:19, 38:16,
41:14
**objection** [2] - 19:16,
26:12
**obligation** [1] - 12:20
**obviously** [2] - 11:6,
31:13
**October** [6] - 6:19,
6:22, 23:23, 39:11,
39:13, 41:15
**OF** [3] - 1:1, 43:1,
43:2
**often** [1] - 12:14
**once** [1] - 9:23
**one** [4] - 16:17,
20:20, 25:19, 41:13
**operate** [1] - 35:20,
35:22, 37:18
**operative** [1] - 40:4
**oral** [1] - 43:9
**Orange** [1] - 1:20

**originally** [1] - 29:3
**originate** [1] - 34:19
**otherwise** [1] - 40:10
**outside** [1] - 34:5
**own** [1] - 15:25
**owner** [1] - 6:24
**P-e-r-r-o-n-g** [1] -
5:18
**p.m** [1] - 11:14
**PA** [3] - 2:3, 2:6,
43:16
**paid** [8] - 11:23,
12:2, 24:11, 24:12,
25:23, 26:3, 26:11,
28:2
**part** [1] - 18:3
**part-time** [1] - 18:3
**participants** [1] -
11:8
**particular** [4] - 8:6,
8:8, 8:13, 12:13
**parties** [2] - 36:16,
43:10
**party** [1] - 30:19
**past** [3] - 11:18,
16:6, 18:7
**pasta** [3] - 10:1,
10:6, 10:16
**pay** [4] - 12:16,
25:25, 26:13
**paying** [1] - 12:3
**payor** [1] - 12:1
**Peg** [3] - 11:12, 12:7,
40:11
**pending** [4] - 16:3,
16:7, 16:10, 16:11
**PENNSYLVANIA** [2]
- 1:1, 43:2
**Pennsylvania** [11]
- 1:20, 5:21, 6:1, 6:15,
6:18, 9:11, 37:18,
37:25, 38:4, 38:19,
40:25
**people** [4] - 6:6,
12:15, 12:16, 17:7
**percent** [2] - 37:2,
37:17
**perhaps** [1] - 39:12
**PERRONG** [5] - 1:4,
2:2, 2:2, 4:1, 43:6
**Perrong** [13] - 1:14,
3:2, 4:7, 4:10, 4:11,
5:18, 5:19, 19:21,
21:6, 22:6, 26:2,
35:14, 42:2
**person** [3] - 12:2,
24:13, 24:14
**personal** [2] - 8:14,
9:18
**personally** [18] -

7:11, 9:15, 15:24,
23:5, 25:7, 27:2,
27:10, 27:15, 30:25,
33:3, 33:22, 35:1,
35:6, 35:16, 36:5,
36:23, 37:9, 43:5
**persons** [1] - 33:12
**phone** [8] - 7:2, 7:4,
7:7, 7:10, 7:15, 8:2,
9:1, 12:10
**picked** [1] - 4:19
**picture** [1] - 31:22
**Place** [1] - 1:19
**placed** [2] - 24:8,
30:19
**places** [1] - 8:25
**plaintiff** [2] - 4:10,
42:2
**Plaintiff** [1] - 1:5
**players** [1] - 12:15
**pleading** [1] - 32:4
**plugged** [5] - 8:20,
8:23, 8:24, 8:25, 9:1
**policy** [1] - 30:15
**political** [6] - 35:20,
37:13, 37:18, 38:1,
38:4, 38:20
**possible** [1] - 30:7
**possibly** [1] - 21:12
**Post** [1] - 5:25
**potential** [1] - 25:15
**practically** [1] - 9:7
**practice** [2] - 6:14,
6:17
**pre** [7] - 10:3, 11:6,
11:11, 22:17, 30:8,
31:13, 31:14
**pre-recorded** [7] -
10:3, 11:6, 11:11,
22:17, 30:8, 31:13,
31:14
**precise** [2] - 13:4,
37:19
**preparation** [1] -
41:17
**prerecorded** [1] -
22:20
**previous** [1] - 36:14
**print** [1] - 43:17
**privilege** [5] - 25:16,
25:17, 41:14, 41:15,
41:18
**Pro** [2] - 2:4, 2:6
**pro** [3] - 11:12, 12:7,
41:17
**pro-life** [2] - 11:12,
12:7
**proceeding** [1] -
20:21
**produce** [3] - 18:15,

18:22, 25:14
**production** [1] -
18:23
**properly** [1] - 11:25
**propounded** [1] -
43:9
**protected** [2] - 26:6,
26:12
**protection** [1] - 6:6
**provide** [2] - 33:10,
34:4
**provided** [5] - 33:10,
33:25, 34:2, 34:20,
34:24
**provisions** [2] -
14:17, 40:16
**Public** [3] - 1:23,
43:4, 43:24
**public** [3] - 13:22,
14:4, 14:5
**purpose** [2] - 8:12,
38:21
**questioned** [1] - 41:1
**questions** [5] -
19:11, 30:12, 30:16,
43:9, 43:14
**quiet** [1] - 9:22
**quote** [3] - 30:25,
31:17, 33:3
**quote/unquote** [5] -
6:2, 8:23, 27:9, 27:14,
30:4
**random** [1] - 22:18
**rather** [1] - 34:9
**read** [2] - 41:20,
41:21
**realized** [3] - 9:17,
9:23, 10:22
**really** [2] - 22:5, 26:3
**Realtime** [1] - 1:23,
43:4
**reason** [7] - 5:3, 5:6,
8:6, 8:8, 12:14, 30:20,
31:6
**receive** [3] - 6:4,
8:18, 8:19
**received** [3] - 18:5,
30:2, 33:15
**receiving** [1] - 24:15
**recent** [1] - 15:19
**recollection** [7] -
5:10, 14:1, 14:7,
36:15, 39:17, 39:18,
39:19
**record** [7] - 5:16, 9:6,
9:7, 13:23, 14:4, 14:5,
41:24
**recorded** [12] - 10:3,
11:6, 11:11, 22:17,
23:6, 30:8, 31:3, 31:9,

31:13, 31:14, 32:17,
36:8
**recording** [2] - 9:11,
31:24
**recordings** [1] -
31:25
**recovered** [2] -
15:15, 18:25
**reduced** [1] - 43:17
**refer** [1] - 22:21
**reference** [1] - 7:18
**regarding** [2] - 9:11,
40:17
**Registered** [2] -
1:22, 43:3
**registered** [3] -
37:24, 38:1, 38:3
**release** [1] - 26:17
**relevant** [2] - 7:8, 7:9
**relied** [1] - 36:1
**remember** [2] -
26:24, 26:25
**remind** [1] - 14:14
**rephrase** [2] - 16:16,
37:15
**reporter** [1] - 43:19
**Reporter** [4] - 1:22,
1:23, 43:3, 43:4
**Republican** [2] -
11:17, 12:10
**request** [2] - 18:17,
18:20
**requested** [2] -
30:10, 30:14
**requesting** [1] -
16:20
**required** [1] - 11:22
**residence** [1] - 5:19
**residential** [5] - 5:20,
6:3, 6:4, 7:17, 8:14
**respective** [1] -
43:10
**respond** [1] - 18:18
**responsible** [1] -
12:4
**result** [2] - 15:11,
30:2
**return** [3] - 18:10,
18:13, 37:2
**returns** [3] - 18:16,
18:22, 18:24
**review** [1] - 25:15
**reviewed** [1] - 39:4
**Rifle** [1] - 31:19
**RMR** [2] - 43:15,
43:23
**Road** [2] - 2:5, 5:25
**robocall** [1] - 10:3
**robocalls** [2] - 23:3,
31:1

**Roman** [1] - 5:17
**ROMAN** [1] - 5:17
**Rule** [3] - 25:19,
26:7, 26:12
**rules** [4] - 9:10,
20:20, 37:7, 40:17
**running** [2] - 35:9,
35:11
**Saturday** [1] - 11:13
**saw** [2] - 37:23,
39:14
**Schiff** [6] - 26:22,
28:8, 28:12, 29:6,
30:3
**school** [1] - 38:11
**Se** [2] - 2:4, 2:6
**se** [1] - 41:17
**Second** [1] - 31:18
**second** [5] - 10:16,
10:18, 11:5, 12:5,
26:23
**Secretary** [1] - 39:5
**see** [10] - 11:21,
11:23, 21:17, 26:23,
31:6, 31:20, 31:21,
37:7, 39:5, 39:21
**seeking** [1] - 30:6
**selection** [4] - 33:4,
33:22, 35:7, 35:17
**send** [4] - 18:17,
18:20, 31:7, 33:13
**sense** [1] - 31:5
**sent** [9] - 22:17,
28:22, 29:10, 29:12,
29:25, 31:4, 31:5,
34:9
**September** [2] -
39:12, 39:13
**sequential** [1] -
22:18
**served** [1] - 37:9
**service** [8] - 36:18,
36:20, 37:3, 37:4,
37:10, 40:14, 40:17
**services** [3] - 6:25,
8:9
**set** [1] - 43:11
**settle** [2] - 28:13,
29:1
**settlement** [8] -
25:18, 25:20, 28:4,
28:9, 28:17, 28:19,
28:21, 29:4
**settlements** [5] -
15:12, 15:15, 17:7,
17:10, 18:6
**several** [1] - 36:16
**shortly** [2] - 23:22,
23:24, 39:9
**sign** [2] - 41:20,

41:21

**significant** [26] - 19:1, 19:6, 19:7, 19:9, 19:12, 19:13, 19:14, 19:18, 19:20, 19:23, 20:5, 20:6, 20:12, 20:14, 20:15, 20:16, 20:19, 20:23, 21:18, 21:19, 21:23, 21:24, 22:1, 22:3, 22:10, 22:11

**simple** [2] - 18:21, 27:13

**single** [1] - 31:15

**sometime** [6] - 7:21, 13:1, 13:5, 24:2, 39:9, 39:11

**sometimes** [1] - 11:23

**somewhere** [10] - 13:16, 14:23, 15:8, 15:10, 15:13, 16:1, 16:2, 16:15, 32:7, 34:5

**sorry** [1] - 42:1

**sorts** [2] - 31:14, 33:12

**speaking** [1] - 25:4

**specific** [1] - 36:3

**specifically** [1] - 35:14

**specificity** [2] - 16:20, 27:19

**spell** [1] - 5:16

**spoken** [1] - 27:1

**SS** [1] - 43:1

**started** [1] - 29:5

**State** [2] - 37:25, 38:5

**state** [2] - 5:16, 41:8

**State's** [3] - 38:19, 39:5, 39:15

**STATES** [1] - 1:1

**States** [1] - 40:23

**stating** [1] - 41:24

**statute** [3] - 12:24, 14:18, 41:11

**statutes** [1] - 9:10

**stay** [4] - 11:7, 11:18, 32:22, 32:25

**stayed** [3] - 9:18, 9:23, 10:23

**stenographer** [2] - 4:19, 21:15

**stenographically** [1] - 43:15

**still** [7] - 7:1, 38:25, 39:3, 39:23, 39:25, 40:1, 40:4

**stove** [5] - 10:1,

10:2, 10:7, 10:16

**Street** [1] - 1:20

**strong** [1] - 31:17

**student** [4] - 6:24, 18:1, 18:3, 18:4

**subscribed** [1] - 43:20

**substance** [1] - 28:20

**sue** [3] - 17:7, 17:11, 26:15

**suit** [8] - 12:19, 12:23, 12:24, 13:3, 17:12, 17:19, 39:23, 40:19

**suits** [9] - 12:21, 13:11, 13:14, 13:15, 15:20, 16:20, 17:1, 17:4, 17:6

**supporter** [1] - 31:17

**sworn** [3] - 4:1, 43:7, 43:13

**system** [1] - 22:13

**tax** [5] - 18:9, 18:12, 18:15, 18:22, 18:23

**TCPA** [7] - 12:25, 13:12, 15:20, 17:1, 17:19, 40:20, 41:11

**Tele** [22] - 22:22, 23:16, 23:21, 24:18, 25:6, 25:21, 26:18, 28:10, 30:1, 30:14, 32:20, 33:8, 33:9, 33:25, 34:3, 34:5, 34:6, 34:10, 34:15, 34:18, 36:10, 36:13

**Tele-Town** [22] - 22:22, 23:16, 23:21, 24:18, 25:6, 25:21, 26:18, 28:10, 30:1, 30:14, 32:20, 33:8, 33:9, 33:25, 34:3, 34:5, 34:6, 34:10, 34:15, 34:18, 36:10, 36:13

**telephone** [8] - 7:11, 7:24, 8:9, 8:20, 9:11, 11:16, 22:13, 33:11

**ten** [3] - 14:12, 14:16, 14:23

**term** [5] - 21:18, 21:22, 22:2, 22:11, 27:17

**terminology** [1] - 37:19

**terms** [1] - 22:9

**testified** [2] - 4:2, 43:10

**testify** [1] - 43:7

**testimony** [5] - 5:7,

5:13, 16:7, 39:14, 43:20

**THE** [2] - 1:1, 1:1

**Thompson** [2] - 11:15, 12:8

**threatened** [3] - 6:5, 17:7, 17:11

**TO** [1] - 3:1

**today** [4] - 4:9, 5:10, 5:13, 19:22

**toll** [1] - 12:9

**toll-free** [1] - 12:9

**top** [1] - 23:18

**total** [2] - 15:7, 32:20

**tough** [1] - 19:22

**town** [3] - 11:15, 12:9, 32:21

**Town** [22] - 22:22, 23:16, 23:21, 24:18, 25:6, 25:21, 26:18, 28:10, 30:1, 30:14, 32:20, 33:8, 33:9, 33:25, 34:3, 34:5, 34:6, 34:10, 34:15, 34:18, 36:10, 36:13

**transcript** [2] - 21:17, 41:22

**transcription** [1] - 43:18

**trial** [1] - 41:17

**truth** [3] - 43:7, 43:8

**truthfully** [1] - 22:6

**trying** [1] - 28:13

**Tuesday** [1] - 1:17

**two** [2] - 7:17, 10:14

**unclear** [1] - 19:19

**under** [15] - 12:24, 13:12, 14:14, 14:17, 15:20, 17:1, 17:19, 25:19, 26:7, 26:12, 35:9, 40:20, 41:11, 43:18

**understood** [3] - 4:24, 21:22, 21:24

**unfair** [1] - 17:21

**United** [1] - 40:23

**UNITED** [1] - 1:1

**unwanted** [1] - 24:15

**up** [8] - 4:19, 10:1, 10:4, 10:10, 11:3, 21:18, 26:8, 28:24

**utilized** [1] - 22:13

**Valley** [1] - 5:25

**various** [1] - 33:12

**verifying** [1] - 38:20

**Verizon** [2] - 8:1, 8:10

**version** [1] - 41:22

**versus** [1] - 4:7

**vicarious** [1] - 12:17

**voice** [3] - 31:10, 31:13, 31:23

**Voice** [4] - 7:17, 8:5, 8:8, 8:9

**voicemail** [1] - 9:14

**VOIP** [2] - 8:4, 8:7

**vs** [1] - 1:6

**wait** [2] - 28:11, 34:1

**wants** [1] - 31:19

**website** [5] - 31:21, 38:19, 39:5, 39:15, 40:8

**whatsoever** [2] - 36:4, 37:21

**whereof** [1] - 43:20

**whole** [1] - 43:8

**willing** [5] - 18:15, 18:19, 18:22, 25:14, 29:1

**WITNESS** [1] - 3:1

**witness** [3] - 4:1, 43:6, 43:13

**word** [2] - 20:16, 20:18

**year** [8] - 14:2, 14:8, 14:17, 15:5, 15:19, 15:23, 16:6, 38:11

**years** [2] - 17:2, 18:7

**yourself** [2] - 23:2, 37:1